**SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, et al., Plaintiffs,**

v.

**UNITED STATES COAST GUARD, et al., Defendants.**

**Civil Action No. 93-787-LFO.**

United States District Court, District of Columbia.

March 27, 1997.

Stanley M. Brand, David E. Frulla, Brand & Lowell, Washington, DC, for Plaintiffs.

Sandra M. Schraibman, Henry A. Azar, Jr., Dept. of Justice, Civil Div., Washington, DC (LCDR Matthew Glomb, U.S. Coast Guard, Office of General Counsel, of counsel), for Defendants.

### MEMORANDUM

OBERDORFER, District Judge.

A coalition of maritime labor organizations and individual merchant seamen and boatmen filed an action challenging a Coast Guard final rule that established user fees for maritime licensing, certification of regis-

try, and merchant mariner documentation. A November 23, 1994 Memorandum and Order held that (i) the Coast Guard user fees were constitutional and consistent with the Independent Offices Appropriations Act, 31 U.S.C. § 9701; and (ii) the Coast Guard could not recover from each applicant a $17 fee to conduct a background check of the applicant. The case was remanded to the Coast Guard for further calculations of the costs of its licensing and documenting activities. *Seafarers Intern. Union of No. Am. v. United States Coast Guard*, 871 F.Supp. 9, 14–16 (D.D.C.1994). Plaintiffs and the Coast Guard appealed. On April 12, 1996, the Court of Appeals affirmed in part and reversed in part and remanded. The Court of Appeals upheld the Coast Guard's general authority to charge merchant mariners reasonable user fees. The Court of Appeals also held that the Coast Guard may charge a fee to cover the cost of an FBI investigation to determine if the applicant has a disqualifying criminal record. *Seafarers Intern. Union of No. Am. v. United States Coast Guard*, 81 F.3d 179 (D.C.Cir.1996). The Court of Appeals remanded the following issue to the district court:

> [I]f the background check at issue is strictly limited to ensuring compliance with statutory requirements, then the $17 fee can be assessed. If, however, the FBI check sweeps more broadly than the statutory authorization, then a question arises whether the full cost of the background check can be passed on to the applicant. This matter must be considered on remand. *Id.* at 186.

A dissenting opinion argued that remand of this issue was unnecessary. It stated that "because the Coast Guard's rule refers to the FBI check as a 'criminal record check[ ],' the court should find, as a matter of law, that the FBI check sweeps no more broadly than the agency's statutory authorization." *Id.* at 186 n. 5 (internal quotation omitted) The majority opinion disagreed, stating:

> Such a conclusion misconceives our role as appellate judges. In this case, the District Court made no factual findings regarding the scope of the FBI check. Therefore, there is no basis for deciding whether the check is limited to what the statute re-

quires. The rule promulgated by the Coast Guard may indicate that the FBI inquires only into the criminal record of each applicant. However, the District Court must determine, on remand, what the scope of the FBI check is, *in actual practice.* We simply cannot dispose of this question based on the vague language of the Coast Guard's regulations without any factual basis.

*Id.* (emphasis in original).

The Court of Appeals issued its mandate on June 9, 1996. Defendants moved for summary judgment arguing that "in actual practice" the FBI inquires only into the criminal record of applicants for licenses, certificates of registry, and merchant mariner documentation. Defendant's motion for summary judgment must be granted because the background check at issue—in theory and in practice—is strictly limited to reviewing the criminal record of such applicants.

Congress authorizes the Coast Guard to deny a marine license, a certificate of registry or a merchant mariner document to an applicant who (i) "within 10 years before applying for the license, certificate, or document, has been convicted of violating a dangerous drug law of the United States or of a State;" or (ii) "when applying, has ever been a user of, or addicted to, a dangerous drug unless the individual provides satisfactory proof that the individual is cured." 46 U.S.C. § 7503(b)(1) & (b)(2). *See* 46 C.F.R. § 10.201(b) (applicant with drug conviction within 3 years of filing application is ineligible for license or certificate; period may be extended up to 10 years if warranted); *id.* § 12.02–4 (document presumptively will not issue to applicant with drug conviction within 10 years of filing application). In addition, Congress authorizes the Coast Guard to "review the criminal record" of any individual who applies for a license, certificate or document. 46 U.S.C. §§ 7101(h), 7302(d).

The government provides uncontroverted evidence that the FBI's investigation into an applicant for a license or other document covered by the Coast Guard's user fee program is limited to determining whether the applicant has a criminal record. The govern-

ment's assertion is supported by affidavits of several individuals with personal knowledge of the manner in which the FBI investigation is conducted. Plaintiffs' opposition does not contest the facts averred in the affidavits. Plaintiffs also do not respond to Defendants Statement of Material Facts. Therefore, the statements set forth in affidavits accompanying the government's motion for summary judgment establish the following facts with respect to applicants for marine licenses, certificates of registry, and merchant mariner documents:

1. The Coast Guard sends the FBI a fingerprint card of the applicant, displaying the applicant's fingerprint and biographical information, including the applicant's name, date of birth, and social security number.

2. The Criminal Justice Information Services Division of the FBI processes fingerprint cards for the Coast Guard.

3. The CJIS division checks the applicant's biographical information against the FBI's computer records to determine if the applicant has a criminal record. If it appears from the biographical information that the applicant does have a criminal record, the applicant's fingerprints are compared to the fingerprints of the individual with that criminal record. If the applicant's fingerprints do not match the fingerprints of the individual identified as having a criminal record, then a separate fingerprint search of that applicant is conducted.

4. The FBI investigation is limited to the applicant's criminal record.

5. The FBI returns to the Coast Guard the fingerprint card of each applicant together with a report of any criminal record of that applicant.

6. The fees charged to the Coast Guard by the FBI to conduct this investigation do not exceed the cost to the FBI in doing so.

Therefore, since the FBI check is limited to a report of the applicant's criminal record, the check does not sweep more broadly than the statutory authorization. As stated above, the Coast Guard is authorized "review the criminal record" of any such applicant. 46 U.S.C. §§ 7101(h), 7302(d). The FBI check is plainly limited to such a review. Thus, since the FBI check does not sweep more broadly than the statutory authorization, the full cost of the background check can be passed on to the applicant.

Plaintiffs arguments to the contrary are unavailing. First, plaintiffs seize upon a sample criminal record supplied by the government, *see* Ervin Decl., Exh. 2, as evidence that the background check does sweep more broadly than the statutory authorization. Plaintiffs point out that the sample criminal record provides evidence of (i) arrests that did not lead to conviction; (ii) convictions for crimes that do not involve dangerous drugs; and (iii) arrests and convictions that are more than 10 years old. Plaintiffs are apparently aware that the Coast Guard is entitled to "review the criminal record" of an applicant. Opp. at 2. Plaintiffs mistakenly construe this provision to mean that Congress only authorized the Coast Guard "review the criminal record" for dangerous drug convictions within the last 10 years. Plaintiffs point to no support for such a reading of this statute and the court is aware of none. The statute plainly states, in two places, that "[t]he Secretary may review the criminal record of an individual who applies for a" merchant mariner's document, a license of registry, or a certificate of registry. 46 U.S.C. §§ 7101(h), 7302(d). Arrests that do not lead to conviction, convictions for minor crimes, and convictions that are more than 10 years old are part of an applicant's criminal record. The Coast Guard is entitled to review that record.

Plaintiffs second argument is that it is unreasonable for the Coast Guard to conduct any investigation to determine whether an applicant has a disqualifying criminal record. Plaintiffs suggest that the Coast Guard could simply rely upon the sworn statements of the applicants as to their criminal history. First, this argument is beyond the scope of the only issue presented on remand. It is, therefore, not properly before this court. Second, it is inconsistent with the decision of the Court of Appeals. *Seafarers,* 81 F.3d at 185–86 ("It is logical that the agency should also be permitted to charge the applicant a fee to recover the expense of whatever reasonable procedure is employed by the Coast Guard to

**16**

comply with the statute."). Third, the threat of criminal sanctions for false statements is unlikely to be an effective deterrent to false statements where such assertions will not be verified by the FBI. Finally, Congress did not intend the Coast Guard to obtain drug-related information from the applicants themselves. The requirement that Congress may "review the criminal record" of an applicant is contained within subsection (h) of 46 U.S.C. § 7101. Subsection (g) of that same section provides that the Secretary may not issue such a license unless the applicant "makes available to the Secretary" information concerning the applicant's driving record. If Congress intended the applicant to "make available to the Secretary" information concerning an applicant's *criminal* record, it is logical to assume that Subsection (g) of 46 U.S.C. § 7101 would state just that. In sum, conducting a background check of the applicant's criminal record is reasonable.

Plaintiff's final argument, contained within a footnote, is that the government's motion for summary, judgment improperly relies on litigation affidavits instead of references to the administrative record. Opp. at 4 n. 5, citing *AT&T Information Systems, Inc. v. GSA,* 810 F.2d 1233, 1236 (D.C.Cir.1987). This argument is not persuasive. First, after considerable discussion in the majority' and dissenting opinions, the Court of Appeals remanded this case for *this court* to determine whether the background check at issue is strictly limited to a review of the applicant's criminal record. The Court of Appeals did not remand this issue to this court with directions to remand this issue to the agency.

Second, the concern of the Court of Appeals in *AT&T* is not implicated here. AT&T brought a reverse Freedom of Information Act case challenging the GSA's decision to release AT&T price data to its competitors. AT&T had supplied the price data to GSA pursuant to a bid solicitation. The district court granted GSA's motion for summary judgment, relying upon a declaration of a GSA employee explaining why GSA rejected AT&T's request not to release the price data to AT&T's competitors. The Court of Appeals reversed, holding that GSA could not offer on judicial review a post hoc ration-alization for releasing the data where no rationalization was provided at the agency level. Such a concern is not at issue here. In the instant case, the fact that the FBI investigation is limited to reviewing the applicant's criminal record is part of the administrative record. This fact, therefore, is not a post hoc rationalization. Indeed, the Court of Appeals' dissenting opinion recognizes that "in the notice of proposed rulemaking and final rule under review, the Coast Guard described the FBI's activity as a 'criminal record check,' not a general background check. 56 Fed.Reg. 26,448, 28,450 (1991); 58 Fed.Reg. 15,228, 15–231 (1993)." *Seafarers,* 81 F.3d at 193. The "actual practice" of background checks is described within the administrative record. *See Id.* at 191, citing 58 Fed.Reg. at 15,231; 46 C.F.R. § 10.205(f). Thus, the government may rely upon affidavits, where, as here, the affidavits are merely "explanatory of the original record and . . . contain no new rationalizations." *AT&T,* 810 F.2d at 1236. It was not improper, therefore, for the government to rely on affidavits that corroborate facts that are already part of the administrative record.

Accordingly, an accompanying order grants the government's motion for summary judgment.

### ORDER

For reasons stated in an accompanying Memorandum, it is this 26th day of March 1997 hereby:

ORDERED: that defendants' motion for summary judgment is GRANTED; and it is further

ORDERED: that a status call shall be held on *May 5, 1997, at 2:00 p.m. in Courtroom No. 3* to determine the status of the Coast Guard's recalculation of the costs of its licensing and documenting activities.